**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
:
DARLENE DAVIS-HEEP,                        :          CIVIL ACTION
:
Plaintiff,           :
:
v.                       :          No. 09-5619
:
:
CITY OF PHILADELPHIA; SHELLY R.    :
SMITH and KATHLEEN TIA BURKE,       :
:
Defendants.          :
_____:

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                      **APRIL  19, 2010**

Presently before the Court is Defendants City of Philadelphia (the "City") and Shelly R.

Smith's ("Smith") (collectively, "Defendants")  Motion to Dismiss the Complaint of Plaintiff

Darlene Davis-Heep ("Plaintiff").  For the reasons set forth below, this Motion will be granted in

part and denied in part.

**I.        BACKGROUND**

Plaintiff is a former Senior Attorney for the City's Law Department ("Law Department").

Smith was appointed as the City Solicitor for the City of Philadelphia in January 2007, and was

Plaintiff's direct supervisor.  Defendant Kathleen Tia Burke ("Burke") was hired by Smith as an

attorney in the Law Department and is alleged to have been in a "supervisory position" over

Plaintiff.  (Compl. ¶ 7.)  Plaintiff asserts that Burke was having an extramarital affair with

Plaintiff's then husband Jeremy Heep.  (Compl. ¶¶ 8-9.)  In February 2008, Plaintiff commenced

a defamation suit against Burke in the Court of Common Pleas of Philadelphia County (the

"Heep-Burke Lawsuit"). That suit was based on allegations that Burke, in her capacity as a supervisor, made false statements about Plaintiff in the course and scope of Burke's employment with the Law Department. (Compl. ¶ 10.) Plaintiff asserts that the Heep-Burke Lawsuit was settled in September of 2008 in exchange for a written concession by Burke that she had made misrepresentations about her. (Compl. ¶ 11.)

In an unrelated suit against the City, McKenna/Carnation v. City of Philadelphia (the "McKenna Lawsuit"),[1] counsel for plaintiffs McKenna and Carnation, Brian Puricelli, Esquire ("Puricelli")[2] requested that the City provide a copy of the settlement agreement in the Heep-Burke Lawsuit. Plaintiff asserts that the McKenna Lawsuit resulted in a jury verdict against the City in the amount of ten million dollars. Plaintiff alleges that Burke was the supervising attorney for the City during post-trial activities in the McKenna Lawsuit, and that during a settlement conference in another case against the City (Speck v. City of Philadelphia) Burke "threatened to paper to death Puricelli in the McKenna/Carnation suit if he did not settle the case." (Resp. Mot. Dismiss at 2.) Plaintiff states that this threat was reported to the court, but Burke denied making the threat. (Id.) The City asserts that in addition to seeking a copy of the Heep-Burke settlement agreement, Puricelli also sought information regarding the status of Burke's maternity leave which was a Law Department matter wholly unrelated to the McKenna Lawsuit. (Mot. Dismiss, Ex. B.) The City maintains that upon learning that Plaintiff had communicated internal personnel matters to Puricelli, she was terminated on December 4, 2008.

---

[1]The McKenna matter is pending in this District under Docket No. 98-CV-05835. It was consolidated with Carnation v. City of Philadelphia which is also pending here under Docket No. 99-CV-1163.

[2]Puricelli is counsel for the Plaintiff in the instant matter.

(Mot. Dismiss, Ex. C.)

Plaintiff filed the instant Complaint on November 25, 2009, and asserts claims for "42 U.S.C. § 1983: Retaliation for First Amendment free speech and petition clause Protected Activities" (Count I); "42 U.S.C. [§] 1983- Monell/Conspiracy & Equal Protection" (Count II); "Wrongful Termination- Pendant State Claim" (Count III); and "Civil Conspiracy - Pendent State Claim" (Count IV). (Mot. Dismiss, Ex. A.)

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that [they do] not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at

the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

## 1.    First Amendment Retaliation Claims

Plaintiff contends that the Defendants retaliated against her by terminating her employment because she:  (1) reported alleged misconduct by Burke; (2) was perceived to have cooperated in a federal civil rights lawsuit against the City; and (3) made a complaint against Burke.  (Compl. ¶ 17.)  Plaintiff asserts that because she engaged in these protected First Amendment activities, she was wrongfully terminated from her employment.  (Compl. ¶ 18.)

We follow a well-established three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment.  See Hill v. Borough of

4

Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006); Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005); Baldassare v. New Jersey, 50 F.3d 188, 195-96 (3d Cir. 2001). First, the employee must show that the activity is in fact protected. Pickering v. Bd. of Educ., 391 U.S. 563, 573 (1968). Second, the employee must show that the protected activity "was a substantial factor in the alleged retaliatory action." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct. Id.

A public employee has a constitutional right to speak on matters of public concern without fear of retaliation. Rankin v. McPherson, 483 U.S. 378, 383-84 (1987); Baldassare, 250 F.3d at 194; Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994) ("A state cannot lawfully discharge an employee for reasons that infringe upon that employee's constitutionally protected interest in freedom of speech."). Public employers cannot silence their employees simply because they disapprove of the content of their speech. Rankin, 483 U.S. at 384.

A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement she made. Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

Once the plaintiff meets the threshold that the speech is protected, the plaintiff must demonstrate that her interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. Pickering, 391 U.S. at 568 (requiring courts to strike "a balance between the interests of the

5

[employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees").

Defendants assert that Plaintiff's Complaint is devoid of any of the elements of a First Amendment claim, "i.e. that she was acting as a citizen and/or that her speech involved an issue of public concern." (Mot. Dismiss at 8-9.)

### A. Reported Misconduct by Burke

Plaintiff claims that her report of Burke's misconduct to her superiors is protected First Amendment activity. Defendants argue, however, that such action is not protected under the First Amendment. We agree with the Defendants.

First, Plaintiff is precluded from asserting First Amendment claims arising out of statements made pursuant to her official duties. Garcetti, 547 U.S. at 413. A public employee does not speak "as a citizen" when she makes a statement "pursuant to [her] official duties." Id. Here, Plaintiff made her report to the Law Department supervisors concerning Burke's alleged misconduct in the course of Burke's official duties as an attorney in the Law Department. There is no allegation in the Complaint or any other assertion by Plaintiff that such complaints about Burke were made as an individual citizen and not as an attorney in that office.

Moreover, Plaintiff's complaints about Burke are not statements of public concern. A public employee's speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). The content of the speech may involve a matter of public concern if it attempts "to bring to light actual or potential wrongdoing or breach of public trust on the part of

government officials." <u>Baldassare</u>, 250 F.3d at 195.  When a public employee speaks not as a

citizen upon matters of public concern, but instead as an employee upon matters only of personal

interest, absent the most unusual circumstances, a federal court is not the appropriate forum in

which to review the wisdom of a personnel decision taken by a public agency allegedly in

reaction to the employee's behavior.  <u>Connick</u>, 461 U.S. at 147; <u>see also</u> <u>Miller v. Clinton</u>

<u>County</u>, 544 F.3d 542, 548 (3d Cir. 2008).

   In <u>Bell v. City of Philadelphia</u>, the Third Circuit determined that a public employee's

complaints against the Philadelphia District Attorney's Office sought not to expose

discriminatory or harassing practices or policies, but were solely about his own abuse and

mistreatment by superiors and coworkers, and thus, were not on a "matter of public concern"

protected by the First Amendment from retaliation.  275 Fed. Appx. 157 (3d Cir. 2008).  Here,

Plaintiff's report to the City supervisors consisted of statements allegedly made by Burke

regarding Plaintiff, in the context of a "physically romantic affair" between Burke and Jeremy

Heep.  (Compl. ¶ 10.)  It is apparent that such complaints consist of purely personal matters and

cannot be deemed a matter of public concern.  Accordingly, this claim is dismissed.

  **B.  Plaintiff's Alleged Cooperation in the McKenna Lawsuit**

   Plaintiff also asserts that she suffered retaliation for her perceived cooperation in a federal

civil rights lawsuit against the City.[3]  (Compl. ¶ 17.)  This contention stems from Plaintiff's

_____

   [3]Paragraph 17 of the Complaint states:

     Defendants in violation of 42 U.S.C. § 1983 retaliated against
     Plaintiff because she reported misconduct by K. Tia Burke, was
     perceived to have cooperated in a federal civil rights lawsuit
     against the City of Philadelphia, made a complaint against K. Tia

"cooperation" in the McKenna Lawsuit regarding the settlement reached in the Heep-Burke Lawsuit. (Compl. ¶ 12.) As noted above, the Heep-Burke Lawsuit was allegedly resolved in exchange for Burke issuing a statement that she had made misrepresentations about the Plaintiff (the "Burke Letter"). On November 15, 2008, Puricelli requested a copy of the Burke Letter and also requested details about Burke's maternity leave. (Mot. Dismiss, Ex. B.)

Defendants assert that although the Complaint provides very little detail regarding the manner in which Plaintiff communicated to Puricelli in the McKenna Lawsuit regarding the personal facts surrounding the Burke-Heep Lawsuit, it is clear that the subject matter of those communications is not a matter of public concern that would be afforded First Amendment protection. Defendants further argue that there is no evidence to suggest that these statements involved anything more than personal statements with no relation to any matter of political, social or other concern to the community and were not made to bring to light actual or potential wrongdoing or breach of public trust. See Baldassare, 250 F.3d at 195. Again, we agree. There is no indication in this record that Plaintiff's statements to Puricelli are anything more than ones of personal interest. Nor were they made in order to "bring light to actual or potential wrongdoing or breach of public trust." Thus, they are not entitled to First Amendment protection, and therefore, this cause of action is dismissed as well.

---

Burke, and for initiating civil process to resolve a grievance against her supervisor K. Tia Burke that was denying plaintiff equal employment and enjoyment of life opportunities.

(Compl. ¶ 17.)

## C. The Heep-Burke Lawsuit

Plaintiff next avers that she was terminated in retaliation for initiating the Heep-Burke Lawsuit. (Compl. ¶ 17.) Defendants assert that this lawsuit should not be afforded First Amendment protection because it does not involve a matter of public concern. They also assert that there is no evidence to suggest that Plaintiff's termination was in any way related to her filing of the Heep-Burke Lawsuit because Plaintiff's Complaint lacks any suggestive temporal proximity between the filing of the Complaint and her termination ten months later. See, e.g., Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding three weeks between the time of a harassment complaint and dismissal did not constitute an unusually suggestive temporal proximity); Andreoli v. Gates, 482 F.3d 642, 650 (3d Cir. 2007) (finding five month time period insufficient to raise inference of causation).

However, it is well established that a public employee is protected under the First Amendment's Petition Clause against retaliation for having filed non-sham lawsuits, grievances, or other petitions with the courts or other government bodies. See San Filippo v. Bongiovanni, 30 F.3d 424, 434-35 (3d Cir. 1994). Such petitions need not involve a matter of public concern. Id. at 441-42. To receive constitutional protection, they need only be non-sham petitions filed within the sanctioned channels of redress. Id. In order for this Court to find that the Heep-Burke Lawsuit was a "sham," we must find that the Plaintiff had an "improper motive for bringing the suit, and the suit must have no reasonable basis." Id. at 437 n.16.

Defendants contend that assuming arguendo that Plaintiff has a valid claim under the Petition Clause, she must still establish a causal connection between the alleged activity and the

adverse employment action.  Defendants assert that it is Plaintiff's burden to establish a casual

relationship between her alleged protected activity and the retaliatory action.  Thomas v.

Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  Defendants maintain that neither

Plaintiff's Complaint nor her opposition brief addresses the absence of temporal proximity

between her filing of the Heep-Burke Lawsuit in February of 2008 and her termination in

December of 2008.

However, while the Complaint does not aver the "temporal proximity" of her

termination, Plaintiff has pled wrongful retaliation for "initiating civil process to resolve a

grievance against her supervisor."  (Compl. ¶ 17.)  As noted above, Twombly stated that the

pleading stage "simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence of the necessary element."  550 U.S. at 556.  Here, Plaintiff has sufficiently pled

the instant First Amendment Petition claim, and she will be given the opportunity in discovery to

establish the element of "temporal proximity."  Accordingly, this claim will not be dismissed at

this stage of the litigation.

## 2.      Qualified Immunity

Defendants assert that Plaintiff's claims against Smith are barred by the doctrine of

qualified immunity.  "[G]overnment officials performing discretionary functions generally are

granted a qualified immunity and are 'shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person should have known.'"  Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "A court evaluating a claim of qualified

immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Id.

Defendants argue that none of Plaintiff's alleged statements or activities are protected under the First Amendment, but even if Plaintiff had properly asserted a violation of federal or constitutional law, Smith would still be entitled to qualified immunity. Defendants assert that reasonable City attorneys in Smith's position would have had no reason to know that terminating the Plaintiff for interjecting her personal issues with Burke into the workplace would amount to a First Amendment violation. (Mot. Dismiss at 17.) Here, as discussed above, we have dismissed Plaintiff's First Amendment retaliation claims for her alleged cooperation in the McKenna Lawsuit, and for retaliation for reporting improper conduct of Burke to her supervisors. Thus, these claims are no longer in this action, and the question of qualified immunity for Smith with regard to them is moot. However, Plaintiff's retaliation claim for filing the Heep-Burke Lawsuit is not being dismissed at this time as discovery may reveal more information regarding this issue. Thus, we do not grant Smith qualified immunity with regard to this issue at this stage of the instant action.

3.    **Section 1983 Claim Against the City**

Plaintiff also asserts a cause of action against the City under 42 U.S.C. § 1983[4] claiming

_____

[4]Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

that the City's retaliation was done pursuant to an official policy and/or custom. (Compl. ¶ 22.)

A municipality cannot be held liable solely because it employs a tortfeasor." Monell v. N.Y. City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, the plaintiff must assert that an actual policy or custom of the municipality was the cause of the constitutional deprivation. Id. In order to sufficiently allege "custom" for Monell purposes, a plaintiff must allege that the "practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. A municipal custom is a "persistent and widespread" practice of municipal action that is "so permanent and well settled as to constitute a custom or usage with the force of law." Id. It is well established that "[p]roof of a single instance of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Okla. City v. Tuttle, 471 U.S. 808, 820 (1985); Brown v. City of Pittsburgh, 586 F.3d 263, 292 (2009).

Here, the City argues that this cause of action should be dismissed because the Plaintiff has not identified any municipal policy or custom that was violated by the City. However, while it is true that Plaintiff has simply pled that the City has a policy to retaliate against its employees for exercising their First Amendment rights (Compl. ¶ 22), a Monell claim against the City cannot be dismissed at this point in this lawsuit. As stated above, Plaintiff's claim that she was

────────────────

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

42 U.S.C. § 1983.

terminated because she filed the Heep-Burke lawsuit is still viable in this case. Plaintiff must be permitted through discovery to attempt to establish that the City has a policy and/or custom in firing employees who file lawsuits against it or its employees. Thus, this claim will not be dismissed.

**4.      Section 1983 Conspiracy Claim**

Plaintiff next avers a cause of action for conspiracy. Defendants assert that Plaintiff has failed to state a claim for civil conspiracy under § 1983 because she has failed to allege the specific facts of a conspiracy. We agree.

In order to state a cause of action for civil conspiracy under § 1983, a plaintiff must plead both the elements of a cause of action under § 1983 and conspiracy. See Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Thus, to state a cause of action for a violation of a constitutional right under § 1983, a plaintiff must sufficiently allege the deprivation of a federally protected right by a person acting under color of state law. 42 U.S.C. § 1983; Thomas, 463 F.3d at 292.

In order for a § 1983 civil conspiracy claim to survive a 12(b)(6) motion, a plaintiff is required to "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009). Indeed, a plaintiff is required to allege that two or more co-conspirators reached an agreement for the purpose of depriving him of his constitutional rights under color of state law. Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). The Capogrosso court stated that while it was "mindful that

direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . . , the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." 588 F.3d at 185 (quoting Crabtree v. Muchmore, 804 F.2d 1475, 1485 (10th Cir. 1990)).

Plaintiff states in her Complaint:

> [T]he conduct of the defendants were by agreement to derive [sic] Plaintiff of his [sic] civil rights. In furtherance of the agreement of the Defendants' acts, actions and conduct were continuing conduct, which was done in and to achieve a common plan or agreement. Which Plan was put in motion by word or deed, as pleaded above, to deprive the Plaintiff of her property, employment and constitutional rights, and to retaliate against the Plaintiff for exercising free speech or petition clause activity rights, or because of her race.

(Compl. ¶ 23.)

In the instant matter, it is apparent that Plaintiff has failed in her Complaint to "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso, 588 F.3d at 185. Thus, Plaintiff's claim for conspiracy under § 1983 is dismissed.

**5.      Race Discrimination Claim**

Plaintiff, an African-American, set forth a claim for race discrimination in her Complaint under Title VII of the 1964 Civil Rights Act and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. (Compl. ¶ 3.) Nonetheless, Plaintiff now asserts that her race claim is not being brought under these sections, but rather, under 42 U.S.C. §§ 1981 and 1983. (Pl.'s

Resp. Mot. Dismiss at 16.)  Accordingly, Title VII and the Pennsylvania Human Relations Act will not be discussed.

As to Plaintiff's § 1981 claim, Plaintiff has no cause of action because no private right of action lies against a state actor under § 1981.  <u>McGovern v. City of Phila.</u>, 554 F.3d 114, 121 (3d Cir. 2009); <u>see also</u> <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 731 (1989) (finding that Section 1981 does not itself provide a remedy against state actors).  The exclusive remedy for relief from a state agency for civil rights violations, including race discrimination, is § 1983. <u>Ford v. Se. Pa Transp. Auth.</u>, No. 09-2975, 2010 WL 1141380, at *1 (3d Cir. Jan.12, 2010). Thus, Plaintiff's claim for race discrimination pursuant to § 1981 is dismissed.

Next, Defendants argue that any race discrimination under § 1983 should be dismissed because "[t]here is not a single allegation in the Complaint that states that Plaintiff was terminated on the basis of race or that otherwise gives rise to any inference of discrimination." (Defs.' Reply at 12.)

In <u>Thomas</u>, the Third Circuit stated that "we now make clear that . . . a civil rights complaint filed under § 1983 against a government official need only satisfy the notice pleading standard of Rule 8(a) regardless of the availability of a qualified immunity defense."  463 F.3d 285, 295-296 (3d. Cir. 2006).  The <u>Thomas</u> court further stated:

> In <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir.2004), we noted that a civil rights complaint was not subject to dismissal due to the absence of factual allegations.  We reasoned that 'a plaintiff need not plead facts,' but, instead, 'need only make out a claim upon which relief can be granted.' Should more facts be necessary to define the disputed facts and issues, we noted that other procedural mechanisms, such as discovery, are available.

Id. at 296 (citations omitted).

Here, although Plaintiff did not aver a claim for racial discrimination individually against Burke and Smith pursuant to § 1983, she did aver a racial discrimination cause of action against these individuals for conspiracy pursuant to § 1983. (Compl. ¶ 23.) Reluctantly, at this time, we will not dismiss this claim, but rather, find that this is sufficient under the notice pleading requirements of Rule 8(a) to state a claim for racial discrimination under § 1983, and will allow Plaintiff the opportunity in discovery to "define the facts and issues" of this claim. Thomas, 463 F.3d at 296.

## 6. State Law Claims

### A. Wrongful Termination

Plaintiff also alleges two state law causes of action in her Complaint. Plaintiff first claims that she was wrongfully discharged from her employment in violation of the public policy of the Commonwealth of Pennsylvania. Plaintiff avers in her Complaint that the "City of Philadelphia is a public employer and/or employer obligated to not discriminate or retaliate against employees who report malfeasance [,] misfeasance, wasteful and/or dangerous acts." (Compl. ¶ 28.) Plaintiff further avers that "Commonwealth of Pennsylvania public policy protects from termination or retaliation Plaintiff's act of reporting wrongdoing by K. Tia Burke, an employee and supervisor in the City of Philadelphia Law Department, for misconduct, malfeasance or misfeasance." (Compl. ¶ 31.) Defendants assert that Plaintiff has no cause of action as an at-will employee.

Under controlling Pennsylvania law, a "public employee takes his job subject to the

possibility of summary removal by the employing authority. He is essentially an employee-at-will." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005); see also Scott v. Phila. Parking Auth., 402 Pa. 151 (Pa. 1960); Miller v. Clinton County, 544 F.3d 542, 552 (3d Cir. 2008). Elmore held that "a public employee in Pennsylvania generally serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment." 399 F.3d at 282. An exception to this rule exists where an employee is terminated for reasons that violate public policy. Pyles v. City of Phila., No. 05-1769, 2006 WL 3613797, at *7 (E.D. Pa. Dec .8, 2006). This exception is limited to situations "where (1) an employer requires an employee to commit a crime, (2) an employer prevents an employee from complying with a statutory duty, or (3) the discharge of the employee is specifically prohibited by statute." Id. The Third Circuit clarified that "the Pennsylvania public policy exception is limited solely to when the employee objects to a course of action that the employer is taking that is clearly illegal." Kelly v. Retirement Pension Plan for Certain Home Office, Managerial and Other Employees of Provident Mut., 73 Fed. Appx. 543, 544-45 (3d Cir. 2003); see also Clark v. Modern Group Ltd., 9 F.3d 321, 328 (3d Cir. 1993) (finding that "Pennsylvania will not recognize a wrongful discharge claim when an at-will employee's discharge is based on a disagreement with management about the legality of a proposed course of action unless the action the employer wants to take actually violates the law"); Woodson v. AMF Leisureland Ctrs., Inc., 842 F.2d 699, 701-02 (3d Cir. 1988) (finding violation of public policy "when the discharge is a result of the employee's compliance with or refusal to violate the law").

In support of this cause of action, Plaintiff argues that she:

may be able to demonstrate that she was fired for her failure to participate

17

in illegal activity.  in [sic] other words not keeping quite [sic].  Plaintiff
has alleged that the defendants conspired to lie to and conceal the false
representation made to a federal court about the threat made in the
McKenna/Carnation case to the McKenna/Carnation attorney, i.e. to paper
him to death if he did not settle the Ten Million Dollar verdict.
Defendants' alleged conduct therefore may have been illegal under various
provisions of Pennsylvania law.  Such as 18 Pa. C.S.A. § 5101[5] which
makes it unlawful to intentionally obstruct or impair the administration of
any government function with an unlawful act.

(Pl.'s Resp. Mot. to Dismiss at 12.)

Cases that have allowed a claim to proceed under the public policy exception have

identified a particular policy or law violated by the employer's actions.  See, e.g., Dugan v. Bell

Tel. of Pa, 876 F. Supp. 713, 725 (W.D. Pa. 1990) (denying motion to dismiss where plaintiff

employee alleged that defendants asked plaintiff to participate in destroying records that were

subpoenaed by the Pennsylvania state legislature as part of an official investigation – an act that

was unlawful under several Pennsylvania statutes); McNulty v. Borden, Inc., 474 F. Supp. 1111,

1120 (E.D. Pa. 1979) (where employee alleged that he was discharged because he refused to

commit a crime or participate in an illegal pricing scheme under antitrust laws); Reuther v.

_____

[5]This section states:

A person commits a misdemeanor of the second degree if he intentionally
obstructs, impairs or perverts the administration of law or other
governmental function by force, violence, physical interference or
obstacle, breach of official duty, or any other unlawful act, except that this
section does not apply to flight by a person charged with a crime, refusal
to submit to arrest, failure to perform a legal duty other than an official
duty, or any other means of avoiding compliance with law without
affirmative interference with governmental functions.

18 Pa. C.S.A. § 5101.

<u>Fowler & Williams, Inc.</u>, 386 A.2d 119, 120-22 (Pa. Super. Ct. 1978) (interference with at-will employee's duty to serve on a jury, a duty expressly protected by statute, violates public policy).

Here, Plaintiff's cause of action fails to rise to the level of a public policy violation. Plaintiff has failed to cite case law or Pennsylvania statutory law that would support a cause of action for wrongful termination based on her refusal to keep silent concerning an alleged threat in the McKenna Lawsuit. It is apparent in this case that the City did not terminate the Plaintiff because she failed to participate in unlawful conduct and/or that it demanded that she commit some unlawful act and she refused to do so. <u>Pyles</u>, 2006 WL 3613797, at *7. Therefore, this cause of action is dismissed.

**B. State Law Conspiracy Claim**

Lastly, Plaintiff has pled a pendent state law claim for conspiracy against Smith and Burke. She claims that they:

> agreed with one another to retaliate against plaintiff for initiating process against K. Tia Burke, for reporting K. Tia Burke's misconduct, and for perceiving that plaintiff had in a civil lawsuit cooperated and provided information about K. Tia Burke's misconduct and a policy of the City and smith [sic] to use the office of City Solicitor [to] retaliate against those that engage in protected activities.

(Compl. ¶ 25.) Defendants argue that these claims fail as a matter of law pursuant to the Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, <u>et</u> <u>seq.</u> ("PSTCA") for failure to state a cause of action. We agree.

The PSTCA provides for state law claim immunity for municipalities and government employees in Pennsylvania. The Act provides that, "no local agency shall be liable for any

damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. There are eight "acts" excepted from the immunity granted under § 8541. However, none apply here. See 42 Pa. C.S. § 8542.[6]

Municipal employees are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment. 42 Pa. C.S. § 8545. However, there is an exception to this general rule: Employees are not immune from liability under § 8545 where their conduct amounts to actual malice or willful misconduct:

> [i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of section[ ] 8545 . . . shall not apply.

42 Pa. C.S. § 8550.

Willful misconduct has been defined by the Pennsylvania Supreme Court as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was

---

[6]Liability can be imposed for:

> (1) the operation of a motor vehicle in the possession or control of a local agency; (2) the care, custody or control of personal property in the possession or control of a local agency; (3) the care, custody or control of real property; (4) a dangerous condition created by trees, traffic controls, or street lights; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; (8) the care, custody or control of animals in the possession or control of a local agency.

42 Pa. C.S. § 8542.

substantially certain to follow, so that such desire can be implied." Renk v. City of Pittsburgh, 537 Pa. 68, 75 (Pa.1994). Otherwise stated, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" Id. at 75; see also Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006); Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001).

Here, Plaintiff's Complaint is devoid of any allegations of willful misconduct as Plaintiff simply avers that the Defendants "agreed with one another to retaliate against plaintiff." (Compl. ¶ 25.) In addition, as a factual basis for her claim of willful misconduct, Plaintiff asserts that "Smith intended to fire the Plaintiff and that intentional [sic] is made clear by the December 4, 2008 letter." (Pl.'s Resp. Mot. Dismiss at 14.) However, it is apparent from the content of this letter that Plaintiff was being terminated because she brought personal matters into the workplace. (Mot. Dismiss, Ex. C.) Plaintiff has failed to cite case law which would support a finding that the contents of this letter can establish a basis for "willful misconduct" on the part of Smith and Burke.

We also find that this conspiracy claim should be dismissed for failure to state a cause of action for civil conspiracy. Under Pennsylvania law, a plaintiff must allege 'that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." Skipworth v. Lead Indus. Ass'n, 547 Pa. 224, 235 (Pa. 1997). Bare allegations of conspiracy, without more, are insufficient to state a claim. See Brown v. Blaine, 833 A.2d 1166, 1173 n.16 (Pa. Commw. Ct. 2003). In the instant matter, Plaintiff has failed to plead malice and/or an

intent to injure, and thus, for these reasons, this claim is dismissed.[7]

An appropriate Order follows.

---

[7]Defendants also assert that the state conspiracy claim is barred by the "intra-corporate conspiracy doctrine." "Under the intra-corporate immunity doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or within the corporation." Lopez v. Maczko, No. 07-1382, 2007 WL 2461709, at *5 (E.D. Pa. Aug. 16, 2007). Defendants assert that this doctrine has been applied to governmental authorities in Pennsylvania. See, e.g., Heffernan v. Hunter, 189 F.3d 405, 412 n.5 (3d Cir. 1999). However, because we have dismissed this claim on other grounds, we need not discuss the applicability of this doctrine to the instant case.