# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLENE DAVIS-HEEP, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 09-5619 |
| CITY OF PHILADELPHIA; SHELLY R. SMITH; and KATHLEEN TIA BURKE, | |
| Defendants. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**  **JULY 27, 2010**

Presently before the Court is Defendant Kathleen Tia Burke's ("Burke") Motion to Dismiss, or in the alternative, Motion for Summary Judgment against Plaintiff Darlene Davis-Heep ("Davis-Heep"). For the reasons set forth below, this Motion will be denied.

## I. BACKGROUND

Davis-Heep is a former Senior Attorney for the City's Law Department ("Law Department"). Shelly R. Smith ("Smith") was appointed as the City Solicitor for the City of Philadelphia (the "City") in January 2007, and was Davis-Heep's direct supervisor. Burke was hired by Smith as an attorney in the Law Department and is alleged to have been in a "supervisory position" over Davis-Heep. (Compl. ¶ 7.) Davis-Heep asserts that Burke was having an extramarital affair with Davis-Heep's then husband Jeremy Heep. (Compl. ¶¶ 8-9.) In February 2008, Davis-Heep commenced a defamation suit against Burke in the Court of Common Pleas of Philadelphia County (the "Heep-Burke Lawsuit"). That suit was based on

allegations that Burke, in her capacity as a supervisor, made false statements about Davis-Heep in the course and scope of Burke's employment with the Law Department. (Compl. ¶ 10.) Davis-Heep asserts that the Heep-Burke Lawsuit was settled in September of 2008 in exchange for a written concession by Burke that she had made misrepresentations about her. (Compl. ¶ 11.)

In an unrelated suit against the City, McKenna/Carnation v. City of Philadelphia (the "McKenna Lawsuit"),[1] counsel for plaintiffs McKenna and Carnation, Brian Puricelli, Esquire ("Puricelli")[2] requested that the City provide a copy of the settlement agreement in the Heep-Burke Lawsuit. Davis-Heep asserts that the McKenna Lawsuit resulted in a jury verdict against the City in the amount of ten million dollars. Davis-Heep alleges that Burke was the supervising attorney for the City during post-trial activities in the McKenna Lawsuit, and that during a settlement conference in another case against the City (Speck v. City of Philadelphia), Burke "threatened to paper to death Puricelli in the McKenna/Carnation suit if he did not settle the case." (Resp. Mot. Dismiss at 2.) Davis-Heep states that this threat was reported to the court, but Burke denied making the threat. (Id.) The City asserts that in addition to seeking a copy of the Heep-Burke settlement agreement, Puricelli also sought information regarding the status of Burke's maternity leave which was a Law Department matter wholly unrelated to the McKenna Lawsuit. (Mot. Dismiss, Ex. B.) The City maintains that upon learning that Davis-Heep had communicated internal personnel matters to Puricelli, she was terminated on December 4, 2008.

---

[1] The McKenna matter is pending in this District under Docket No. 98-CV-05835. It was consolidated with Carnation v. City of Philadelphia which is also pending here under Docket No. 99-CV-1163.

[2] Puricelli is counsel for Davis-Heep in the instant matter.

(Mot. Dismiss, Ex. C.)

Plaintiff filed the instant Complaint on November 25, 2009, and asserts claims for "42 U.S.C. § 1983: Retaliation for First Amendment free speech and petition clause Protected Activities" (Count I); "42 U.S.C. [§] 1983- Monell/Conspiracy & Equal Protection" (Count II); "Wrongful Termination- Pendant State Claim" (Count III); and "Civil Conspiracy - Pendent State Claim" (Count IV). (Mot. Dismiss, Ex. A.) The City and Smith filed a Motion to Dismiss on February 19, 2010. On April 19, 2010, this Court granted this Motion in part and denied it in part. Specifically, we determined that the Motion was granted with respect to the following claims: First Amendment retaliation, § 1983 conspiracy, § 1981 race discrimination, state law wrongful termination, and state law conspiracy. The Motion was denied with respect to Davis-Heep's First Amendment retaliation concerning the Heep-Burke Lawsuit, § 1983 claim against the City, and § 1983 race discrimination claim. See Davis v. City of Philadelphia, No. 09-5619, 2010 WL 1568502, at *1 (E.D. Pa. Apr. 19, 2010).

Burke has now filed the instant Motion to Dismiss, or in the alternative, Motion for Summary Judgment on her own behalf asserting that Davis-Heep's Complaint fails to state any claims upon which relief can be granted.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744,

750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that [they do] not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine

4

whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of

5

evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## III. DISCUSSION

As noted above, after our decision in the previous Motion to Dismiss, only Davis-Heep's Petition Clause claim and § 1983 race discrimination claim remain against Burke. In this current Motion, Burke first asserts that Davis-Heep's § 1983 claim against her fails because she was not a "policymaker" in the City's Law Department.

Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). We first note, however, that a reading of the Complaint indicates that Davis-Heep never averred that Burke had "policymaking" authority within the City's Law Department. Thus, Davis-Heep has not alleged a § 1983 claim against Burke as a "policymaker." However, Burke need not be a "policymaker" to be liable to Davis-Heep in a § 1983 action. To be held liable under § 1983, a defendant sued in her supervisory capacity must be "personally involved" in causing the alleged wrongdoing. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Personal involvement can be demonstrated by showing that the defendant (a) participated in violating plaintiff's rights; (b) directed others to violate them; or (c) as a person in charge, had knowledge of and acquiesced in his subordinates' violation. A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 586 (3d

6

Cir. 2004) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

Here, Burke asserts that in order to establish that Burke violated Davis-Heep's rights under the Petition Clause and/or subjected Davis-Heep to unlawful racial discrimination, Davis-Heep must first establish that Burke had supervisory authority over her. Burke argues that although both Davis-Heep and she were employed by the City's Law Department, she was never in a supervisory position over her. Davis-Heep, on the other hand, argues that although Burke was not her direct supervisor, she was a supervisor in the City's Law Department and had supervisory authority over her. Davis-Heep asserts that Burke's claim of not being a direct supervisor over her does not mean that Burke did not have "de facto" supervisory authority over her. See Bonenberger v. Plymouth Twp., 123 F.3d 20 (3d Cir. 1997). Bonenberger held that a state employee may, under certain circumstances, wield considerable control over a subordinate whose work he regularly supervises, even if he does not hire, fire, or issue regular evaluations of her work. 123 F.3d at 23; see also Hill v. Borough of Kutztown, 455 F.3d 225, 240 (3d Cir. 2006). Bonenberger also stated:

> There is simply no plausible justification for distinguishing between abuse of state authority by one who holds the formal title of supervisor, on the one hand, and abuse of state authority by one who bears no such title but whose regular duties nonetheless include a virtually identical supervisory role, on the other.

32 F.3d at 23.

In support of her position that she held no supervisory authority over Davis-Heep, Burke has submitted an affidavit from the First Deputy City Solicitor for the City, Donna Mouzayck ("Mouzayck"). In the affidavit, Mouzayck states that as the First Deputy City Solicitor, she is familiar with the chain of command within the City's Law Department. (Mot. Dismiss, Ex. B at

4.) She states that Davis-Heep was assigned to the Regulatory Affairs Unit of the Law Department from February 14, 2003 through her date of termination, and that Davis-Heep was never assigned to any other unit. Mouzayck asserts that Davis-Heep's supervisor was Patrick O'Neill ("O'Neill"), Divisional Deputy for the Environmental Division.[3] Mouzayck states further that Burke began work there on April 2, 2008 and was only assigned to the Labor and Employment Unit of the City's Law Department, and that "at no time did Burke act as Plaintiff's supervisor and/or have any supervisory authority" over her.[4] (Mot. Dismiss, Ex. B at 7-8, 11-12.)

Davis-Heep counters the affidavit of Mouzayck concerning the chain of command of the City Law Department with a declaration of her own. She states that she worked as a Senior Attorney in the Regulatory Affairs Department for approximately six years and became familiar with the actual chain of command as it "actually occurs in the City Law Department." (Pl.'s Resp. Mot. Dismiss, Ex. 1 at 1.) She states that as a Senior Attorney in Regulatory Affairs, she performed work for other units of the Law Department including: "Appeals and Litigation, Social Services, Labor and Employment, NTI, Real Estate, Commercial Law, and General Litigation." (Id. at 3.) She maintains that she was supervised by the Chief Deputies of these other units and that she reported to and was supervised by others in senior positions from these other units. She further states that "Chief Deputies are senior to and in supervisory positions

---

[3] Mouzayck states that O'Neill reported to J. Barry Davis ("Davis"), Chief Deputy for Regulatory Affairs. She adds that Davis reported to the Chair of the Corporate and Tax Group, Daniel Cantu-Hertzler who reported to Smith. (Mot. Dismiss, Ex. B at 9.)

[4] Mouzayck states that Burke's supervisor was Don Marion, and thereafter, Elizabeth Mattioni, Chair of the Litigation Group. She further states that the Corporate and Tax Group and the Litigation Group are separate and not in the same chain of command. (Mot. Dismiss, Ex. B at 10-11.)

over a Senior Attorney, no matter what Unit they are in. Tia Burke[5] was senior to me as a supervisor and was a Chief Deputy." (Id. at 4.) She adds that Senior Attorneys are supervised by the Chief Deputies of units other than Regulatory Affairs, and that this was "standard procedure and a regular and expected occurrence." (Id. at 6.) Davis-Heep further declares that:

> Tia Burke, although not in my Unit, was nevertheless superior in position to me and in a Chain of Supervision that I was subject to, albeit Burke's primary Chain of Command was with the Employment Law Unit, for the Law Department. Burke was supervisor, and was nevertheless over me, because she was a Chief Deputy of my Unit and routinely supervised Senior Attorneys and others from other Units.

(Id. at 7.)

Davis-Heep argues that at this stage of the proceedings, with no answer filed from Burke, no deposition taken of her, and no other discovery conducted, the question of Burke's supervisory authority over her is still at issue. Davis-Heep maintains that there currently exists a genuine issue of material fact regarding the issues of Burke's participation in her termination and her supervisory authority over her. We agree with Davis-Heep at this time.

It is clear from the case law that in order for Davis-Heep to maintain causes of action under the Petition Clause and § 1983 race discrimination, Burke must have had at least some supervisory authority over Davis-Heep during the course of her employment with the Law Department. Presently submitted to us on this issue are the parties' contradictory affidavits

---

[5]Burke submitted a Declaration on her behalf stating that during her tenure as Chief Deputy of the Labor and Employment Unit of the City's Law Department, she never directly or indirectly supervised Davis-Heep or exercised supervisory authority over Davis-Heep or her work. Burke also states that during her employment with the City, she did not have policymaking authority with the Law Department, and as such, she was never responsible for establishing any City policies, practices, or customs. (Def.'s Reply Mot. Dismiss, Ex. 1.)

9

regarding whether Burke ever had supervisory authority over Davis-Heep. At this time, under both the standard for a motion to dismiss and the stricter standard for summary judgment, we will deny Burke's Motion. We find that there exists a genuine issue of material fact concerning the issue of Burke's supervisory authority over Davis-Heep. We will, thus, allow Davis-Heep the opportunity to further pursue this issue in discovery.[6]

      An appropriate Order follows.

---

[6]We do note that Davis-Heep's declaration only states that she was typically supervised by Chief Deputies of other Units of which Burke was a Chief Deputy. However, she never states that she was supervised by Burke directly. In order to survive a future motion for summary judgment after the appropriate discovery is conducted, Davis-Heep will have to submit evidence of instances of Burke having direct supervisory authority over her. See Bonenberger, 123 F.3d at 20.