IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARLENE DAVIS-HEEP, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 09-5619 |
| CITY OF PHILADELPHIA; SHELLY R. SMITH; and KATHLEEN TIA BURKE, | : | |
| Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                                   **JULY 20, 2011**

      Presently before the Court is Defendants, Kathleen Tia Burke ("Burke"), Shelly R. Smith ("Smith"), and City of Philadelphia's (the "City") (collectively, the "Defendants") Motion for Summary Judgment against Plaintiff, Darlene Davis-Heep ("Davis-Heep"). Also before this Court is Davis-Heep's Motion for Summary Judgment and Motion for Appointment of Counsel. For the reasons set forth below, the Defendants' Motion for Summary Judgment will be granted, and Davis-Heep's Motion for Summary Judgment and Motion for Appointment of Counsel will be denied.[1]

---

[1] In addition, Davis-Heep has made allegations of ex-parte communications between this Court and the Defendants. We shall also address this issue, infra.

I.      BACKGROUND

Davis-Heep is a former Senior Attorney for the City's Law Department ("Law Department"). Smith was appointed as the City Solicitor for the City in January 2007, and was Davis-Heep's direct supervisor. Burke was hired by Smith as an attorney in the Law Department and is alleged to have been in a "supervisory position" over Davis-Heep. (Compl. ¶ 7.) Davis-Heep asserts that Burke was having an extramarital affair with Davis-Heep's then husband Jeremy Heep. (Compl. ¶¶ 8-9.) In February 2008, Davis-Heep commenced a defamation suit against Burke in the Court of Common Pleas of Philadelphia County (the "Heep-Burke Lawsuit"). That suit was based on allegations that Burke, in her capacity as a supervisor, made false statements about Davis-Heep in the course and scope of Burke's employment with the Law Department. (Compl. ¶ 10.) Davis-Heep asserts that the Heep-Burke Lawsuit was settled in September of 2008 in exchange for a written concession by Burke that she had made misrepresentations about her. (Compl. ¶ 11.)

In an unrelated suit against the City, McKenna/Carnation v. City of Philadelphia (the "McKenna Lawsuit"),[2] counsel for plaintiffs McKenna and Carnation, Brian Puricelli, Esquire ("Puricelli")[3] requested that the City provide a copy of the settlement agreement in the Heep-Burke Lawsuit. Davis-Heep asserts that the McKenna Lawsuit resulted in a jury verdict against

---

[2]The McKenna matter was pending in this District under Docket No. 98-cv-05835. It was consolidated with Carnation v. City of Philadelphia, Docket No. 99-cv-1163. The court docket in this matter indicates that the case has been closed and is currently on appeal in the Third Circuit Court of Appeals.

[3]Puricelli was also counsel for Davis-Heep in the instant matter, but was later disqualified by this Court. This issue will also be discussed, infra.

the City in the amount of ten million dollars.  Davis-Heep alleges that Burke was the supervising attorney for the City during post-trial activities in the McKenna Lawsuit, and that during a settlement conference in another case against the City (Speck v. City of Philadelphia), Burke "threatened to paper to death Puricelli in the McKenna/Carnation suit if he did not settle the case."  Davis-Heep states that this threat was reported to the court, but Burke denied making the threat.  The City asserts that in addition to seeking a copy of the Heep-Burke settlement agreement, Puricelli also sought information regarding the status of Burke's maternity leave which was a Law Department matter wholly unrelated to the McKenna Lawsuit.  The City maintains that upon learning that Davis-Heep had communicated internal personnel matters to Puricelli, she was terminated on December 4, 2008.

Plaintiff filed the instant Complaint on November 25, 2009, and asserted claims for "42 U.S.C. § 1983: Retaliation for First Amendment free speech and petition clause Protected Activities" (Count I); "42 U.S.C. [§] 1983- Monell/Conspiracy & Equal Protection" (Count II); "Wrongful Termination- Pendent State Claim" (Count III); and "Civil Conspiracy - Pendent State Claim" (Count IV).  The City and Smith filed a Motion to Dismiss on February 19, 2010.  On April 19, 2010, this Court granted the Motion in part and denied it in part.  Specifically, we determined that the Motion was granted with respect to the following claims:  First Amendment retaliation, § 1983 conspiracy, § 1981 race discrimination, state law wrongful termination, and state law conspiracy.  The Motion was denied with respect to Davis-Heep's Petition Clause claim for retaliation concerning the Heep-Burke Lawsuit, the § 1983 claim against the City, and the § 1983 race discrimination claim.  See Davis v. City of Philadelphia, No. 09-5619, 2010 WL 1568502, at *1 (E.D. Pa. Apr. 19, 2010).

Burke then filed a Motion to Dismiss on May 11, 2010, which we denied on July 27, 2010.  See Davis v. City of Philadelphia, No. 09-5619, 2010 WL 2991405, at *1 (E.D. Pa. July 27, 2010).  Specifically, Burke asserted that in order to establish that Burke violated Davis-Heep's rights under the Petition Clause and/or subjected Davis-Heep to unlawful racial discrimination, Davis-Heep must first establish that Burke had supervisory authority over her.  Burke argued that although both Davis-Heep and she were employed by the City's Law Department, she was never in a supervisory position over her.  Davis-Heep, on the other hand, argued that although Burke was not her direct supervisor, she was a supervisor in the City's Law Department and had supervisory authority over her.  We denied this Motion and allowed Davis-Heep the opportunity to further pursue this issue in discovery.  Id. at 4.[4]

On September 13, 2010, we filed a Scheduling Order stating that the discovery deadline for both parties was January 10, 2011, and that any dispositive motions were due by January 24, 2010.  Thereafter, on December 22, 2010, the Defendants filed a Motion to Disqualify Puricelli as Davis-Heep's counsel.  Davis-Heep filed a Motion for Summary Judgment on December 31, 2010, and the Defendants filed a Motion for Summary Judgment on January 24, 2011.  Also, on this date, this Court held a hearing on the Defendants' Motion to Disqualify Counsel.  After hearing argument, we granted the Motion and ordered Puricelli disqualified from acting as counsel for Davis-Heep in this case.  We further ordered that this matter was to be stayed for a period of sixty days in order to allow Davis-Heep the opportunity to find new counsel.  Davis-

---

[4]We did add that in order to survive a future motion for summary judgment after the appropriate discovery was conducted, Davis-Heep would have to submit evidence of instances of Burke having direct supervisory authority over her.  See Bonenberger v. Plymouth Twp., 123 F.3d 20 (3d Cir. 1997).

Heep filed a Notice of Appeal of this Order in the Third Circuit on February 19, 2011, and such appeal is still pending.  On March 9, 2011, we ordered that effective March 25, 2011, the stay in this case was to be lifted and that Davis-Heep had until April 25, 2011 to respond to the Defendants' Summary Judgment Motion.  On March 10, 2011, Davis-Heep filed a Motion for a Stay Pending Appeal, which we denied on April 18, 2011.  On April 25, 2011, Davis-Heep filed Motions to "Compel Responses by Defendants to Discovery," to "Reinstate Claims or Amend the Complaint," and for an "Extension of Time to Respond to Defendants' Summary Judgment Motion."  We denied these Motions on June 3, 2011, but gave Davis-Heep until June 17, 2011 to file her response to the Defendants' Motion for Summary Judgment.  Davis-Heep then filed a "Motion for Voir Dire and Discovery Regarding Possible Recusal of Judge Kelly" which made a general allegation of ex parte communications between this Court and the Defendants.  On June 10, 2011, we ordered Davis-Heep to file a brief setting forth specific instances of ex parte communications between this Court and the Defendants, and giving the Defendants until July 5, 2011 to respond.  Davis-Heep filed a Response to the Defendants' Summary Judgment Motion on June 15, 2011, and then filed a Motion for Appointment of Counsel on June 21, 2011.  Defendants filed a Supplemental Brief in Support of its Motion for Summary Judgment on July 5, 2011, and Davis-Heep filed a response on July 11, 2011.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or

whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

### III.     DISCUSSION

**1.     Summary Judgment**

As noted above, three claims remain in this action: (1) the Petition Clause claim concerning alleged retaliation by Smith, Burke, and the City for the filing of the Heep-Burke Lawsuit; (2) the § 1983 claim against the City; and (3) the § 1983 race discrimination claim.  We will discuss each in turn.

**A.  Petition Clause**

In our prior Memorandum denying the Defendants' Motion to Dismiss regarding Davis-Heep's Petition Clause claim, we relied on the Third Circuit decision, San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994).  In that case, the court held that a public employee need not show that her petition involves a matter of public concern in order to state a claim for a violation of her Petition Clause rights under the First Amendment.  Id. at 441-42.  However, in light of the recent Supreme Court decision, Borough of Duryea v. Guarnieri, No. 09-146, 2011 WL 2437008, * 1 (U.S. June 20, 2011), it is clear that summary judgment should be granted for the Defendants on this issue.

In that decision, the Court determined that "[a] public employee suing his employer under the First Amendment's Speech Clause must show that he spoke as a citizen on a matter of public concern." Id.  The Court further stated that "[e]ven where the employee makes that showing, however, courts balance his employee's right to engage in speech against the government's interest in promoting the efficiency and effectiveness of the public services it performs through its employees." Id.

The Court added that:

> The substantial government interests that justify a cautious and restrained approach to protecting public employees' speech are just as relevant in Petition Clause cases. A petition, no less than speech, can interfere with government's efficient and effective operation by, e.g., seeking results that "contravene governmental policies or impair the proper performance of governmental functions." Garcetti v. Ceballos, 547 U.S. 410, 419, 126 S.Ct. 1951, 164 L.Ed.2d 689. A petition taking the form of a lawsuit against the government employer may be particularly disruptive, consuming public officials' time and attention, burdening their exercise of legitimate authority, and blurring the lines of accountability between them and the public.
>
> * * * *
>
> The framework used to govern public employees' Speech Clause claims, when applied to the Petition Clause, will protect both the government's interests and the employee's First Amendment right. If a public employee petitions as an employee on a matter of purely private concern, his First Amendment interest must give way, as it does in speech cases. San Diego v. Roe, 543 U.S. 77, 82–83, 125 S.Ct. 521, 160 L.Ed.2d 410. If he petitions as a citizen on a matter of public concern, his First Amendment interest must be balanced against the government's countervailing interest in the effective and efficient management of its internal affairs. Pickering, supra, at 568, 88 S.Ct. 1731. If that balance favors the public employee, the First Amendment claim will be sustained. If the balance favors the employer, the employee's First Amendment claim will fail even though the petition is on a matter of public concern.

Id. at 2.

Here, it is clear that the filing of the Heep-Burke lawsuit involved purely personal matters between Davis-Heep and Burke concerning Burke's alleged affair with Davis-Heep's then husband, Jeremy Heep. It, thus, cannot be deemed a matter of public concern.[5] Accordingly,

---

[5]Moreover, both Smith and Burke would both be entitled to qualified immunity in this case. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct

under the holding just handed down in Borough of Duryea, Davis-Heep's filing of the Heep-Burke lawsuit is not an act protected under the Petition Clause of the First Amendment, and thus, summary judgment is granted in favor of Burke and Smith.[6]

### B. The City

As noted, we did not earlier dismiss Davis-Heep's § 1983[7] cause of action against the City alleging that the City's retaliation in firing her was done pursuant to an official policy and/or custom. We determined that Davis-Heep should be "permitted through discovery to attempt to establish that the City has a policy and/or custom in firing employees who file lawsuits against it

---

does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Id. Here, as discussed, Davis-Heep's action in filing the Davis-Burke lawsuit is not protected First Amendment activity because it involved a purely private matter between the parties, and not one of public concern.

[6]In addition, Davis-Heep has failed to present any evidence in this record of retaliation on the part of Smith or Burke.

[7]Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

42 U.S.C. § 1983.

or its employees." See Davis, 2010 WL 1568502 at * 7.

"A municipality cannot be held liable solely because it employs a tortfeasor." Monell v. N.Y. City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, the plaintiff must assert that an actual policy or custom of the municipality was the cause of the constitutional deprivation. Id. In order to sufficiently allege "custom" for Monell purposes, a plaintiff must allege that the "practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. A municipal custom is a "persistent and widespread" practice of municipal action that is "so permanent and well settled as to constitute a custom or usage with the force of law." Id. It is well established that "[p]roof of a single instance of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Okla. City v. Tuttle, 471 U.S. 808, 820 (1985); Brown v. City of Pittsburgh, 586 F.3d 263, 292 (2009).

This claim, however, should now be dismissed on summary judgment for two reasons. First, this claim should be dismissed because Davis-Heep has failed to present any evidence of any municipal policy or custom on the part of the City that it fired and/or retaliated against its employees for filing lawsuits against it or asserting their First Amendment rights. Second, as discussed above, Davis-Heep's filing of the Heep-Burke Lawsuit is not protected First Amendment speech because it concerned a strictly private matter between these parties. See Borough of Duryea, 2011 WL 2437008 at * 1.

### C. Race Discrimination

In addressing a race discrimination claim in a prior Motion to Dismiss, we determined that "although Plaintiff did not aver a claim for racial discrimination individually against Burke and Smith pursuant to § 1983, she did aver a racial discrimination cause of action against these individuals for conspiracy pursuant to § 1983." See Davis, 2010 WL 1568502 at * 8. We concluded that "[r]eluctantly, at this time, we will not dismiss this claim, but rather, find that this is sufficient under the notice pleading requirements of Rule 8(a) to state a claim for racial discrimination under § 1983, and will allow Plaintiff the opportunity in discovery to define the facts and issues of this claim." Id.

However, since that time over a year ago, Davis-Heep has not presented one bit of evidence regarding racial discrimination on the part of Smith, Burke, or the City of Philadelphia. Accordingly, this claim like the others, has no basis in the record, and will be dismissed on summary judgment.

**2.      Appointment of Counsel**

As noted, Davis-Heep has filed a Motion for Appointment of Counsel. There is no constitutional or statutory right to appointed counsel for civil litigants. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). However, 28 U.S.C. § 1915(d) provides for discretionary appointments:

> [t]he court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

Id. In Tabron v. Grace, 6 F.3d 147, 153 (3d Cir.1993), the Third Circuit enumerated a series of

indeterminable, non-exhaustive factors for the district court to consider in a motion for appointment of counsel. However, as a threshold issue, it must appear that the plaintiff's claim has some arguable merit in fact and law. Id. at 155. The court determined further that if the district court opines that the plaintiff's claims are arguably meritorious in law and fact, then the court will undertake a six-factor test:

>   (1)  the plaintiff's ability to present his or her own case;
>
>   (2)  the complexity of the legal issues;
>
>   (3)  the degree to which factual investigation will be necessary and the ability to pursue such investigation;
>
>   (4)  the amount a case is likely to turn on credibility determinations;
>
>   (5)  whether the case will require the testimony of expert witnesses; and
>
>   (6)  whether the plaintiff can attain and afford counsel on his or her own behalf.

Id. at 155-56. Therefore, the district court is instructed to perform a two-prong analysis in considering a motion for appointment of counsel: (i) whether plaintiff has presented arguably meritorious claims; and (ii) whether the balance of the six-factor Tabron test weighs in favor of appointing counsel.

Here, with regards to the first prong of the Tabron analysis, as discussed above and in our previous two Memoranda of Law,[8] we have determined that Davis-Heep's claims are without

---

[8] See Davis, 2010 WL 1568502 at *1; Davis, 2010 WL 2991405 at *1.

merit. Thus, our consideration of Davis-Heep's Motion for Appointment of Counsel could end here. However, we will also consider Tabron's second prong and the six-part test.

First, in evaluating Davis-Heep's ability to represent herself, we should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience." Id. at 156. This factor clearly weighs heavily against appointing counsel because Davis-Heep, herself, is an attorney and, in fact, was a Senior Attorney for the City's Law Department.[9]

Regarding the second and third elements- the complexity of the legal issues and the degree to which factual investigation will be necessary and the ability to pursue such investigation, we find these elements of the six-part analysis tips the scales in favor of not appointing counsel. As noted, Davis-Heep is an attorney, and is certainly in a favorable position to understand the legal issues in this case, and has demonstrated such understanding with her various filings with the Court. In addition, this is not a case where Davis-Heep was unrepresented throughout the bulk of the litigation. As outlined earlier, she was, in fact, represented from the filing of her Complaint on November 25, 2009 through January 24, 2011, the date of Puricelli's disqualification. This period included two Motions to Dismiss, the entire discovery period granted by this Court, and the time that Davis-Heep had to file any dispositive motions.[10] It is notable that during the discovery period and while represented by counsel, Davis-Heep never requested an extension of time to complete more discovery or to file dispositive

---

[9]Davis-Heep states in her Motion for Appointment of Counsel that she is currently working as a part-time attorney at a law clinic. (Mot. Appointment of Counsel at 1.)

[10]As noted earlier, in a Scheduling Order dated September 13, 2010, we ordered all discovery to be completed by January 10, 2011 and all dispositive motions to be filed by January 24, 2011.

motions. In fact, she filed her own Motion for Summary Judgment on December 31, 2010.

Fourth, we believe that this case, if it indeed had any merit, would "turn on credibility determinations" of the parties and we weigh this factor in favor of appointing counsel. Fifth, Davis-Heep most likely would not be required to produce expert witnesses in this action, as evidenced by the fact that she did not name any experts during the discovery period while represented. Lastly, Davis-Heep asserts that she has been unable to find an attorney who is willing to take this case at this stage of the litigation, and that she has been unable to find full-time employment and currently works as a part-time staff attorney at a law clinic at less than a third of her salary with the City.[11] We weigh this factor in favor of appointing counsel. Thus, factors one, two, three, and five weigh heavily against appointing counsel, and the totality of the circumstances weighs in favor of not appointing counsel for this particular case. Accordingly, the Motion is denied.

3. **Ex Parte Communications**

On March 15, 2011, Davis-Heep filed a document called "Objection to Defendants' Exp [sic] Part [sic] Communications With the Court." This document stated:

> NOW INTO COURT comes plaintiff who enters an objection to defendants', with and/or through defense counsel, ex parte communication with the court. It appears that there is continuing ex parte and informal communication between the court and the defendants and counsel for defendants in this matter.
>
> This is particularly egregious as the court has denied my right to counsel by disqualifying my counsel even though there is no

---

[11]Although it seems reasonable to conclude that if she is only working part-time as an attorney, this would give her more time to act as her own attorney in this action.

> evidence that my counsel can provide testimony that will be
> helpful to the defendants.
>
> Additionally it is my understanding that such ex parte
> communication prompts action by the court without allowing me to
> respond or participate in the decision.  I must object to this.

(Pl.'s Objections to Defs.' Ex Parte Communications at 1.)  We denied these unspecified "Objections" in an Order dated June 3, 2011.  On June 7, 2011, Davis-Heep filed a document called a "Motion for Voir Dire and Discovery Regarding Possible Recusal of Judge Kelly."  In such, Davis-Heep again makes unspecified allegations of ex parte communications between this Court and the Defendants.  On June 10, 2011, we issued an Order stating that Davis-Heep "shall file by June 24, 2011 a brief setting forth specific instances of ex parte communications between this Court and the Defendants with any support for such."  We further ordered that the Defendants shall file responses to said brief by July 5, 2011.  On June 15, 2011, in response to this Order, Davis-Heep filed a one-paragraph brief stating:

> In response to the question of the Court regarding ex part [sic]
> communications, Plaintiff refers to the ex parte request by
> defendants that Plaintiff be ordered to respond to the motion for
> summary judgment, the Court granting that request without
> allowing plaintiff the opportunity to respond and then striking the
> plaintiff's objection to that ex parte request that is the subject of
> the defendants' Motion to Strike and Plaintiff's Opposition to the
> Motion to Strike [sic] This ex parte request was made after
> plaintiff was deprived of assistance of counsel in this case and in
> conjunction with the denial of plaintiff's request that this matter be
> held in abeyance pending appeal of the disqualification of
> plaintiff's counsel.

(Pl.'s Brief at 1.)  Defendants filed their response on July 5, 2011.  Although it has been difficult to decipher exactly what Davis-Heep is calling ex parte communications from her filings, it

appears that she is referring to our March 9, 2011 Order which stated that "effective March 25, 2011, the stay in this case is lifted, in accordance with this Court's Order of January 24, 2011." It was further ordered that Davis-Heep had until April 24, 2011 to respond to the Defendants' Motion for Summary Judgment. As is apparent from Davis-Heep's above assertion, she offers no support for any ex parte communication between this Court and any Defendant, and her allegations are unfounded.

As noted above, on January 24, 2011, we issued an Order disqualifying Puricelli as Davis-Heep's counsel. We also ordered that this case be "stayed for a period of sixty days to allow Plaintiff the opportunity to find new counsel." On February 19, 2011, Puricelli, continuing to act as counsel for Davis-Heep, filed an appeal in the Third Circuit of several interlocutory Orders of this Court.[12] On this same date, the Third Circuit issued an Order listing this appeal for "possible dismissal due to jurisdictional defect," in that "[t]he orders appealed are not final within the meaning of 28 U.S.C. § 1291 and are not otherwise appealable at this time." See Davis-Heep v. City of Philadelphia, et al., U.S. Court of Appeals for the Third Circuit, No. 11-1480, Doc. No. 003110450995. This appeal is still pending in that court.

In a letter dated March 8, 2011, defense counsel informed this Court of the Third Circuit's ruling, and requested that we lift our "stay and proceed with this case on March 25, 2011, in accordance with the Court's Order of January 24, 2011 and that the Court set a deadline of April 25, 2011 for Plaintiff to respond to Defendants' pending Motion for Summary

---

[12]Specifically, the following Orders were appealed: (1) Order dated April 19, 2010, dismissing several of Davis-Heep's claims, (2) Order dated December 20, 2010, denying Davis-Heep's Motion to Compel and granting Defendants' Motion to Compel; and (3) Order dated January 24, 2011, disqualifying Puricelli as counsel.

Judgment." (Defs.' Resp. Mot. For Voir Dire and Discovery, Ex. B.) With regard to this letter, this Court did not conduct any phone calls with defense counsel, did not respond by letter, or participate in any form of communication with any Defendants or their counsel, ex parte or otherwise. It is apparent that our March 8, 2011 Order merely followed through on our January 24, 2011 Order staying the case for sixty days. Obviously, sixty days from January 24, 2011 is exactly March 25, 2011. In addition, we also gave Davis-Heep thirty days until April 25, 2011 to respond to the Defendants' Motion for Summary Judgment which is more time than required under our Local Rules of Civil Procedure.[13] Accordingly, Davis-Heep's allegations of ex parte communications between this Court and the Defendants are baseless.[14]

An appropriate Order follows.

---

[13] Local Rule of Civil Procedure 7.1(c) states that an opposing party has twenty-one (21) days to respond to a Motion for Summary Judgment filed under Fed. R. Civ. P. 56(c).

[14] Moreover, Defendants have submitted proof that they not only sent a copy of this letter to Davis-Heep's home address via certified mail, return address requested, but they also served the letter on Puricelli by facsimile. (Defs.' Resp. Mot. For Voir Dire and Discovery, Ex. B.)